IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

LARRY N. WELLS,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-0004

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.  **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   A.  *Wells' Education and Employment Background* . . . . . . . . . . . . . . 4
   B.  *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . . 4
      1.  *Wells' Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      2.  *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . 6
   C.  *Wells' Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   A.  *ALJ'S Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 11
   B.  *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 13
      1.  *Trial Work Period* . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      2.  *Credibility Determination* . . . . . . . . . . . . . . . . . . . . 18
      3.  *Dr. Vernon's Opinions* . . . . . . . . . . . . . . . . . . . . . . . 21
      4.  *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.  **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Larry N. Wells on January 12, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits.[1] Wells asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Wells requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[1] On February 17, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Wells' Education and Employment Background

Wells was born in 1957. He is a high school graduate. He has no further training beyond high school. In the past, Wells worked as a security guard.

### B. Administrative Hearing Testimony

#### 1. Wells' Testimony

At the administrative hearing, Wells' attorney asked Wells whether his weight, 378 pounds, affected his postural abilities. Wells testified that it is difficult for him to bend, stoop, kneel, and squat. Wells stated that he falls periodically, and needs help getting off the floor or ground after he has fallen. Wells also described having severe swelling in his legs, requiring him to put his legs up and wrap them in a hot towel. Physical activity makes the swelling worse. Wells indicated that he's had the leg swelling problem for a long time, including when he used to work as a security guard. Specifically, he testified that "[a] long time I had to take my legs and put them up on the desk higher than my waist and sat there for about 15, 20 minutes before I'd have to get up and go do a round and I get halfway around on a round and I'd have to sit down somewhere and prop them up again."[2] Wells also stated that he has difficulties with carpal tunnel syndrome, which makes gripping hard, and pain in his hips and low back, which makes walking difficult. According to Wells, he is unable to perform his past work as a security guard primarily

---

[2] Administrative Record at 49.

4

because he has difficulty staying awake. Wells testified that "I just sit there, work on a puzzle book or do something on the computer and the next thing I know I just fall asleep."[3]

Additionally, the ALJ and Wells had the following colloquy regarding his farm work and wood chopping from October 2012 through March 2013, during his alleged period of disability:

> Q: So I want to talk a little bit more about this work that you did in exchange for firewood, is that right?
>
> A: For the use of a vehicle to get firewood.
>
> Q: So when you get the firewood, are you cutting down the wood yourself and cutting up, or does somebody else do that for you?
>
> A: Yeah, I've been cutting it down, cutting it up. When I cut it down, I pull a chunk off so I can sit on it -- I've got to sit down while I cut the rest of the tree. I can't stand very long.
>
> Q: How much can you lift?
>
> A: Don't know now. I just -- I used to be able to lift 100 pounds, but I don't think I can even lift 25 pounds now.
>
> Q: So you cut the tree down and then once the tree's down, you cut off a log so you can sit on [it] and then you do the rest of it in a seated position, is that right?
>
> A: Yes, I do.
>
> Q: And then do you load the truck yourself with the logs that you've cut up?
>
> A: Yeah, I take them uphill one at a time. I takes me about five minutes to get up the hill to put it in the truck, because then I've got to stop halfway up, take a break, then I've got to go next way up and then take a break before I go back down.
>
> Q: And so what kind of jobs were you doing for the person so that you could use the vehicle?
>
> A: Oh, caring for his calves and horses.
>
> Q: Like feeding them?

---

[3] *Id.* at 54.

| A: | Feeding them, bedding them. When they're sick, he had me give them shots, if I could catch them. |
| Q: | And you did that all through the winter? |
| A: | Oh yes, I did. Breaking ice on the water. |
| Q: | And you worked every day? |
| A: | Every day. I didn't have a day off. |
| Q: | Not even weekends? |
| A: | It was rare when I got a weekend. |
| Q: | And you were working about eight hours a day? |
| A: | Pretty close to 12 to 13 hours a day. It would've been eight hours a day if I could've been able to get in there and get the chores done and out. |
| Q: | Do you feel like it took you longer to do the chores than it would take a person that didn't have any impairments? |
| A: | Yes. |

(Administrative Record at 57-59.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided the vocational expert with a hypothetical for a person who:

> could occasionally lift and carry 20 pounds, and could frequently lift and carry 10 pounds. This individual could stand or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day. Visibility to push and pull, including the operation of hand and foot controls would be unlimited[.] . . . He could occasionally climb ramps and stairs, ladders[,] ropes and scaffolds, balance, stoop, kneel, crouch and crawl.

(Administrative Record at 63.) The vocational expert testified that under such limitations, Wells could return to his past relevant work as a security guard. Next, the ALJ inquired whether an individual could be competitively employed if the individual had the same limitations as found in hypothetical number one, but was also limited to only sedentary work. The vocational expert replied that under such limitations, Wells could perform the

job of police aide. The vocational expert testified that police aide was the "only job" that would meet the second hypothetical. Finally, the ALJ inquired:

> Q: And if the individual had to work at a slow pace for one third of the day, would there be any jobs he could do?
>
> A: It's my professional opinion that that would eliminate competitive employment.

(Administrative Record at 65.)

### C. Wells' Medical History

On April 23, 2010, Dr. Rene Staudacher, D.O., reviewed Wells' medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Wells. Dr. Staudacher determined that Wells could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Wells could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Staudacher found no manipulative, visual, communicative, or environmental limitations.

On August 17, 2010, Wells was referred to Sally Meyer, PT, for a physical therapy consultation. Wells' chief complaints were problems with his knees, occasional loss of balance, and an inability to spend much time on his feet. Specifically, Wells reported that he "has trouble with uneven ground, knees buckling, hip burning, and unstable ankles."[4] Meyer reviewed Wells' "stated limitations" as follows:

> [Wells] states he has trouble standing or walking for an extended period of time. His knee is painful and snaps backwards especially on uneven ground or on steps. He also states his left hip has a burning sensation and goes numb with

_____

[4] Administrative Record at 303.

> pain down to the knee if he is on his feet for long periods of
> time. This has been happening since he got up 6 years ago and
> his hip popped. He has trouble with his ankles also. They
> swell and he has to wear high top boots or ankle braces or he
> will roll his ankle.

> [Wells] states his symptoms are worse some days than others.
> Some days he can walk thru Wall-mart [(*sic*)] and other days
> he needs to use the cart for balance. His balance can be poor
> on uneven ground and with turning or taking large steps.

(Administrative Record at 303.) Upon testing, Meyer found "some" weakness with standing, dorsiflexion, and plantarflexion. Meyer also found minor limitations in bilateral knee range of motion and bilateral hip extension. Meyer noted that "[a]ll other joints were functional."[5] Wells demonstrated normal gait, but had "some difficulty" with complex gait, including heel to toe walking and crossing over. Meyer concluded that Wells' "balance is slightly off and he would have difficulty doing a physical job due to these limitations and due to his size[, weighing 378 pounds at the appointment]."[6]

On December 1, 2011, Wells was referred to Dr. John L. Wagner, DPT, for a physical therapy evaluation. Dr. Wagner noted that Wells' chief complaint was low back pain and left hip pain. Wells reported that his pain began approximately 10 years prior to his appointment, and had been "worsening" since that time. Dr. Wagner noted that according to Wells, "his pain is mostly in his low back extending down to his left buttocks and hip with occasional numbness and tingling."[7] Aggravating factors included standing or sitting for long periods of time. Dr. Wagner noted that Wells had not been employed full-time for about 4 years, but continued to perform odd jobs that included "physical labor

---

[5] *Id*. at 304.

[6] Administrative Record at 304.

[7] *Id*. at 354.

of lifting and carrying," but only for 3-4 hours per week.[8] Upon examination, Dr. Wagner diagnosed Wells with chronic low back pain. Specifically, Dr. Wagner found that Wells "demonstrates a significant limitation[] in lower extremity flexibility as well as postural disfunction [(sic)] and minimal core stabilizations."[9] Dr. Wagner recommended physical therapy 2 times per week for 6 to 8 weeks as treatment.

On March 27, 2012, Dr. Staudacher reviewed Wells' medical records and provided DDS with a physical RFC assessment for Wells. Dr. Staudacher determined that Wells could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Wells could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Staudacher further opined that Wells should avoid "constant" handling bilaterally due to carpal tunnel syndrome. Dr. Staudacher found no visual, communicative, or environmental limitations.

On April 3, 2012, Wells was referred to Dr. Timothy S. Loth, M.D., for evaluation of bilateral hand numbness and tingling. Dr. Loth noted that Wells:

> will get numb with activities during the daytime. He will drop tools, which is a real problem for him. He says his fingers are numb about half the time. He describes tingling, burning pain intermittently, primarily affecting the radial digits, right hand.

(Administrative Record at 371.) Dr. Loth also noted a history of "moderate" bilateral carpal tunnel syndrome based on electrodiagnostic studies performed in January 2011. Upon examination, Dr. Loth diagnosed Wells with bilateral carpal tunnel syndrome, right worse than left. Dr. Loth opined that Wells "would benefit from right carpal tunnel

---

[8] *Id.*

[9] *Id.* at 355.

release, based on his level of symptomatology. However, he is busy calving and doesn't have the time, so he requested a carpal tunnel injection[.]"[10] Wells received the injection, but declined surgical intervention.

On May 23, 2012, at the request of Wells' attorney, Dr. Charles Vernon, M.D., a treating physician, filled out a "Physical Residual Functional Capacity Questionnaire" for Wells. Dr. Vernon diagnosed Wells with hip and ankle pain, possible arthritis, and obesity. Dr. Vernon opined that "[i]mprovement is not expected."[11] Dr. Vernon described the following symptoms for Wells: fatigue, ankle pain, hip pain, difficulty walking due to painful ankles, tension headaches with nausea, shortness of breath with exertion, and leg swelling. Dr. Vernon indicated that Wells gets pain in his ankles and hips if he is on his feet more than 2 hours. Walking and standing also aggravate his pain. Dr. Vernon also indicated that Wells' symptoms and pain would "frequently" interfere with his attention and concentration needed to perform even simple work tasks. Dr. Vernon found that Wells could: (1) walk 2 blocks; (2) sit for 1 hour before needing to get up; (3) stand for 2 hours before needing to sit down or walk around; (4) sit for a total of about 4 hours in an eight-hour workday; (5) stand for a total of about 2 hours in an eight-hour workday; (6) frequently lift 10 pounds or less; (7) occasionally lift 20 pounds; (8) rarely lift 50 pounds; (9) occasionally twist; (10) rarely stoop, climb ladders, and climb scaffolds; (11) never crouch or squat; (12) use his hands to grasp, turn or twist objects less than 10% of an eight-hour workday; (13) use his fingers for fine manipulation less than 10% of an eight-hour workday; and (14) reach in all directions about 25% of an eight-hour workday. Dr. Vernon also determined that Wells would need an unscheduled break every two hours lasting for 15 to 20 minutes during a regular eight-hour workday. Dr. Vernon also estimated that Wells would need to elevate his legs to hip level for

---

[10] Administrative Record at 372.

[11] *Id.* at 405.

30 minutes everyday. Lastly, Dr. Vernon opined that Wells would miss about one day of work per month due to his impairments or treatment for his impairments.

## IV. CONCLUSIONS OF LAW

### A. ALJ'S Disability Determination

The ALJ determined that Wells is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that

11

meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Wells had not engaged in substantial gainful activity since September 4, 2009.[12] At the second step, the

---

[12] At step one, the ALJ also noted that:
    At the hearing, [Wells] testified that since the alleged onset date, he worked everyday from October 2012 through March

(continued...)

ALJ concluded from the medical evidence that Wells had the following severe impairments: obesity, rotator cuff tendinitis, carpal tunnel syndrome, essential hypertension, diabetes, sleep-related breathing disorders, and degenerative disc disease. At the third step, the ALJ found that Wells did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Wells' RFC as follows:

> [Wells] has the residual functional capacity to perform light work . . . except that [he] can only occasionally climb ramps/stairs, ladders, ropes, or scaffolds. Similarly, he can only occasionally balance, stoop, kneel, crouch, or crawl.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Wells could perform his past relevant work as a security guard. Therefore, the ALJ concluded that Wells was not disabled.

### B. Objections Raised By Claimant

Wells argues that the ALJ erred in four respects. First, Wells argues that the ALJ "erred in failing to consider Wells's return to work more than twelve months after his disability began as a trial·work period; as a result, the ALJ erred in considering [his] work

---

[12](...continued)

> 2013, for twelve to thirteen hours per day, doing farm work. He did this so he would have the use of his boss' truck, though he was not paid any wages. This work only stopped after [Wells] got hurt when he "grabbed a 120 pound calf." Such work activity could fall within the "substantial and gainful" definitions of our Agency. However, because [Wells] has not continuously worked at the substantial gainful activity level (with respect to earnings alone) since the alleged onset date, the undersigned will proceed with the sequential evaluation. Still, [Wells'] ability to engage in work at such an activity level is inconsistent with allegations of disability.

(Administrative Record at 19.)

activity as evidence he was not disabled."[13]  Second, Wells argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.  Third, Wells argues that the ALJ failed to properly consider the opinions of his treating physician, Dr. Vernon.  Lastly, Wells argues that the ALJ's RFC assessment is not supported by substantial evidence.

### 1.    *Trial Work Period*

Wells argues that he was entitled to a "trial work period" from October 2012 to March 2013, when he performed farm work in exchange for the use of a truck.  Wells asserts that the ALJ erred by failing to address this issue.  Wells further argues that by failing to address a "trial work period," the ALJ's consideration of his work activity between October 2012 and March 2013, improperly tainted the ALJ's decision.  Wells maintains that the ALJ should have considered his work activity from October 2012 to March 2013 to be a "trial work period," and disregarded such work activity when making her disability determination.  Wells asserts that this matter should be reversed and remanded for consideration of a "trial work period."

The right to a "trial work period" is found in 42 U.S.C. § 422.  The statute provides in pertinent part:

> (c) "Period of trial work" defined
>
> (1) The term "period of trial work", with respect to an individual entitled to benefits under section 423, 402(d), 402(e), or 402(f) of this title, means a period of months beginning and ending as provided in paragraphs (3) and (4).
>
> (2) For purposes of sections 416(i) and 423 of this title, any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in

---

[13] Wells' Brief (docket number 14) at 10.

a month during such period. For purposes of this subsection the term "services" means activity (whether legal or illegal) which is performed for remuneration or gain or is determined by the Commissioner of Social Security to be of a type normally performed for remuneration or gain.

(3) A period of trial work for any individual shall begin with the month in which he becomes entitled to disability insurance benefits. . . . Notwithstanding the preceding sentence . . . no such period may begin for an individual in a period of disability of such individual in which he had a previous period of trial work.

(4) A period of trial work for any individual shall end with the close of whichever of the following months is the earlier:

> (A) the ninth month, in any period of 60 consecutive months, in which the individual renders services (whether or not such nine months are consecutive); or

> (B) the month in which his disability (as defined in section 423(d) of this title) ceases (as determined after application of paragraph (2) of this subsection).

42 U.S.C. § 422(c)(1)-(4).

In *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), "the ALJ's decision was premised on Newton's work at the Black Hawk Foundry during 1994. At step one of the sequential evaluation process the ALJ found that Newton's work from June to September 1994 amounted to gainful activity and that he was therefore not disabled." *Id.* at 693. The Eighth Circuit Court of Appeals determined that the ALJ "erred in basing a decision of no disability on Newton's 1994 work without considering whether it qualified as falling within a trial work period." *Id.* The Eighth Circuit explained:

> Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person becomes entitled to disability benefits for each month after five consecutive months of being under a disability. *Id*. §§ 423(a)(1)(D) & (c)(2)(A). . . .

If a claimant is working in a substantial gainful activity, he will be considered not disabled under step one regardless of his medical condition, age, education, and work experience. *Id*. § 404.1420. Any work performed during a period of claimed disability may show that a claimant can engage in substantial gainful activity. *Id*. Relevant factors include amount of earnings and whether the work was conducted in a sheltered or special environment. *Id*. § 404.1574.

Work done during a trial work period, however, may not be considered in determining whether a claimant's disability has ceased during that period. 42 U.S.C. § 422(c)(2). . . . This provision enables a claimant to test his or her ability to work. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a). Work performed during the trial period may only be considered in determining whether a disability ended at some point after the trial period. 20 C.F.R. § 404.1592(a). In addition, a claimant's disability may be found to have ended during the trial work period "if the medical or other evidence shows that [the claimant is] no longer disabled." *Id*. § 404.1592(e)(2).

In order to be entitled to a trial work period, a claimant must be entitled to disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.1592(d)(2)(I). As noted, a claimant becomes entitled to disability insurance benefits after filing an application and waiting five consecutive months during which he or she is under a disability that has lasted or can be expected to last twelve months. 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A). The trial work period begins with the month in which the individual becomes entitled to disability insurance benefits, but it may not begin before the month in which the application for benefits is filed. *Id*. § 422(c)(3); 20 C.F.R. § 404.1592(e). The trial period ends at the close of the ninth month, whether consecutive or not, in which services have

been performed, or at the month in which evidence besides the trial work shows the claimant is not disabled. *Id.* § 404.1592(e)(1) & (2).

*Newton*, 92 F.3d at 692–93 (footnotes and some citations omitted).

The Eighth Circuit further explained that entitlement to disability benefits "is not conditioned upon receipt of a benefits award, but only upon the passage of five consecutive months of disability lasting twelve continuous months." *Newton*, 92 F.3d at 694 (citing 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A)). Therefore, a claimant may become entitled to disability benefits before adjudication of his or her claim. *Id.* Furthermore, a claimant's statutory trial work period could begin before benefits are actually awarded. *Id.* "[A] trial work period starts in the month that entitlement to disability benefits begins, which is the month following five consecutive months of being under a disability that has lasted or is expected to last a total of twelve continuous months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

The Court finds the present case distinguishable from *Newton*. Here, unlike in *Newton*, the ALJ did not find that Wells engaged in substantial gainful activity at step one of the five-step sequential evaluation. In other words, in this case, the ALJ did not determine at step one that Wells was not disabled because he engaged in substantial gainful activity after his alleged disability onset date, thereby requiring consideration of a "trial work period." *Compare Newton*, 671 F.3d at 693 (finding that the ALJ "erred in basing a decision of no disability on Newton's 1994 work [at step one] without considering whether it qualified as falling within a trial work period."). Instead, the ALJ in this case found at step one that Wells had not engaged in substantial gainful activity, and continued the five-step sequential evaluation, ultimately determining that based on the RFC assessment, Wells could perform his past relevant work as a security guard. The Court concludes that because the ALJ did not determine that Wells was not disabled at step one of the sequential evaluation due to engaging in substantial gainful activity, the ALJ was not

17

required to consider a "trial work period" for Wells. Accordingly, the Court finds Wells' argument on this issue to be without merit.

## 2. Credibility Determination

Wells argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Wells maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Wells' testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies

18

in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Wells' subjective allegations as follows:

> [Wells] has no problems with personal care, is capable of preparing meals, and performing house and yard work. Further [Wells] is able to get around town on his own, handle shopping responsibilities and financial matters, as such needs may arise. [Wells] reported heavy work, including cutting down firewood, and taking care of farm animals. While this does not necessarily indicate [Wells] deliberately attempted to mislead, it does erode the credibility of [Wells'] allegations. Overall, [Wells'] reports of limited daily activities are considered to be outweighed by the other factors discussed herein. (Ex. 10E, 14E).

[Wells] takes medications appropriate to his conditions, which should successfully treat his conditions without materially adverse side-effects (allegations of "grogginess" and drowsiness noted). Moreover, [Wells] has not required hospitalization/long-term intensive treatment for any of his conditions. To his credit, [Wells] has a good work record.

Overall, [Wells'] allegations (and the opinions of Dr. Vernon, discussed below) are mitigated by [his] own admissions. For instance, [Wells] testified that he did not want to have carpal tunnel surgery because he needs to use his hands to cut firewood, and perform other physically difficult tasks. If [Wells'] carpal tunnel syndrome was as severe as alleged, it would be unlikely that [he] would be able to cut firewood, and perform the other tasks, like he describes. Moreover, the activity of cutting firewood, using a chainsaw, and a sledgehammer, in and of themselves are rigorous physical activities, which indicates that [Wells] is not limited to a sedentary type job. Similarly, the fact that [Wells] recently worked seven days per week, for 12 to 13 hours per day, for a period of approximately 6 months since the alleged onset date (doing farm work, which tends to be relatively physically taxing) also mitigates [Wells'] subjective complaints.

(Administrative Record at 23.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Wells' treatment history, medical history, functional restrictions, work history, use of medications, and activities of daily living in making her credibility determination.[14] Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Wells' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ

_____

[14] *See* Administrative Record at 21-23 (providing a thorough review of Wells' medical history which the ALJ found failed "to provide strong support for [Wells'] allegations of disabling limitations.").

is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Wells' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Dr. Vernon's Opinions

Wells argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Vernon. Specifically, Wells argues that the ALJ failed to properly weigh Dr. Vernon's opinions. Wells also argues that the ALJ's reasons for discounting Dr. Vernon's opinions are not supported by substantial evidence in the record. Wells concludes that this matter should be remanded for further consideration of Dr. Vernon's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's

statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. Vernon as follows:

> The undersigned affords little weight to the opinion of Dr. Vernon, who completed a Residual Functional Capacity Questionnaire at the request of [Wells'] representative in May 2012.  The opinion of a treating physician is entitled to great weight unless there is persuasive contradictory evidence.  A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight.  However, the undersigned notes that Dr. Vernon's opinion is not consistent with the other physicians' opinions, and the objective medical evidence in the record as a whole.  Perhaps more importantly, Dr. Vernon's opinion is not consistent with is own contemporaneous treatment notes and objective findings.  The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Wells], and seemed to uncritically accept as true most, if not all, of what [he] reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Wells'] subjective complaints.

(Administrative Record at 24.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Vernon.  The Court also finds that the ALJ provided "good reasons" for affording "little" weight to Dr. Vernon's opinions, including the ALJ's determination of Wells' credibility.[15]  *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967.  Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the

---

[15] *See* Administrative Record at 23 (providing a thorough credibility determination for Wells).

conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 4. RFC Assessment

Wells argues that the ALJ's RFC assessment is flawed. Specifically, Wells argues that the ALJ's RFC assessment is incomplete because it does not properly account for all of his impairments and functional limitations. Wells also argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. Wells maintains that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an

administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ determined that:

> The record does not contain any opinions from treating or examining physicians indicating that [Wells] is disabled or even has limitations greater than those determined in this decision. . . . In addition, the residual functional capacity conclusions reached by the physician[s] employed by DDS also supported a finding of "not disabled." Although the physicians are non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, their opinions do deserve substantial weight in the current instance, particularly because in a case like this there exist a number of other reasons to reach similar conclusions (as explained throughout this decision). The DDS findings were generally adopted by the undersigned. To the extent they deviate from the residual functional capacity assessment above, it is primarily due to the new evidence admitted into the file, including [Wells'] own testimony/admissions, which the DDS physicians did not have the opportunity to review.

> In sum, although [Wells] described disabling symptoms as a result of his medical impairments, the record is not consistent with those allegations. The above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and [Wells'] subjective complaints during the relevant period when taken in the proper context. In view of all of the factors

> discussed above, the limitations on [Wells'] capacities which
> were described earlier in this decision are considered
> warranted, but no greater or additional limitations are justified.

(Administrative Record at 24.) Furthermore, in determining Wells' RFC, the ALJ thoroughly addressed and considered Wells' medical history and treatment for his complaints.[16] The ALJ also properly considered and thoroughly discussed Wells' subjective allegations of disability in making her overall disability determination, including determining Wells' RFC.[17]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Wells' medical records, observations of treating and non-treating physicians, and Wells' own description of his limitations in making the ALJ's RFC assessment for Wells.[18] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Wells' assertion that the ALJ's RFC assessment is flawed is without merit.

## V. CONCLUSION

The Court finds that Wells' "trial work period" argument is inapplicable in this case, and without merit. The Court also finds that the ALJ properly determined Wells' credibility with regard to his subjective complaints of disability and pain. Additionally,

---

[16] *See* Administrative Record at 21-24 (providing a thorough discussion of Wells' overall medical history and treatment).

[17] *Id.* at 23 (providing a thorough discussion of Wells' subjective allegations of disability).

[18] *See* Administrative Record at 21-24 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

the Court finds that the ALJ properly considered and weighed the opinions of Dr. Vernon. Finally, the Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this _19th_ day of October, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA